**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                            No. CR 04-1208 JB

DOMINIC JACQUEZ,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on the Defendant's Objections to the Pre-Sentence Report, filed December 12, 2005 (Doc. 124).  The Court held a sentencing hearing on Defendant Dominic Jacquez' objections on January 11, 2006.  The primary issues are: (i) whether the Court should increase Jacquez' offense level because he obstructed justice; (ii) whether the Court should give Jacquez a reduction in his offense level for acceptance of responsibility; (iii) whether the Court should assign Jacquez any criminal history points; and (iv) whether the Court should grant Jacquez a downward departure.  Because the United States has not established, by a preponderance of the evidence, that Jacquez obstructed justice, and because Jacquez has accepted responsibility for his criminal conduct, the Court will sustain Jacquez' objections in part, but will overrule his objection to his Criminal History Category of II.  The Court will also deny Jacquez' request for a downward departure.

<u>**FACTUAL BACKGROUND**</u>

As the Court can tell by personally observing him, Jacquez is an individual who is of a relatively large, physical, and athletic frame.  He was a star in high school football and was the only

freshman to start for one high school for whom he played.  See Presentence Report ("PSR") ¶ 81, at 24.  Because of his athletic prowess and successes on the football field, Jacquez gained a great deal of confidence in high school, which he feels prepared him to deal with post-high-school life in general.  See Defendant's Objections to the Pre-Sentence Report ("Objections") ¶ 7, at 3.

Unfortunately, Jacquez suffered a serious motorcycle accident shortly after high school, which nearly took his life.  See id. ¶ 7, at 3; PSR ¶ 82, at 24-25.  In July 2001, Jacquez was riding a motorcycle when a car ran a stop sign, and he ran into the side of the car.  See PSR ¶ 82, at 24.  As a result, he was in a coma for several days, and suffered from head and back injuries, and cuts to his arms and neck.  See id. at 24-25.

Jacquez remained at the San Juan Regional Medical Center for approximately one week.  See id. at 25.  He had brain surgery to relieve the pressure on the left side of the brain and had a shunt to drain fluid off of his brain for approximately three months.  See id.  He continues to suffer from headaches/migraines a few times per week, and takes Aspirin and Loritab for the headaches.  See id.

Jacquez explains that he has memory problems and is not able to move as quickly and easily since the accident.  See id.  Jacquez was out of commission for quite some time after his motorcycle accident, and as a result thereof, has been declared totally disabled.  See Objections ¶ 7, at 3.  Nevertheless, since his accident in July 2001, Jacquez held employment for a couple of months in 2004 at Montoya Graphics in Farmington, New Mexico, selling tire rims and accessories for automobiles.  See PSR ¶ 89, at 26.  Thus, although the accident may have contributed to the demise of a promising life and career, Jacquez has been able to secure some employment.

Jacquez asserts that the lifelong injuries he suffered in the crash have had a detrimental effect

on his physical abilities and mental outlook regarding the rest of his life. See Objections ¶ 7, at 3. Having always depended upon his physical prowess to advance his way in the world, and having had that taken from him in the accident, Jacquez became seriously depressed. See id. at 3-4. Jacquez has reported depression since the automobile accident. He has not, however, sought mental health intervention for the depression. See PSR ¶ 84, at 25.

Jacquez asserts that, before his motorcycle accident, he was neither a major drug abuser or a major drug seller. See Objections ¶ 7, at 3. Jacquez states that the only times he consumed drugs before his accident were in a setting of "recreational use," when drugs were "given" to him on occasion when he was with friends, or at a party. See id. He did not purchase drugs for any personal need or addiction, but rather went along with the crowd when that is what the crowd was doing. See id.

Jacquez represents that, after recovering the best he could from his accident and being declared disabled, he began to abuse drugs rather frequently, and then began selling at a time when his depression led him to believe there would never be light at the end of the tunnel for him again. See id. at 4. Jacquez represents that his sister, with whom he has maintained contact, is able to attest to these observations, as she was around him frequently in the time period following the accident. See id. At that time, Jacquez' outlook on life was that he lacked the ability, education, training, and experience to work productively to earn income in any other way. See id. Jacquez argues that, but for the accident, it is highly unlikely that he would have become involved in the drug trade. See id.

**PROCEDURAL BACKGROUND**

1.      **Acceptance of Responsibility/Obstruction of Justice.**

In the plea agreement, the United States has agreed that Jacquez should receive a reduction

in his offense level for Acceptance of Responsibility.   See Plea Agreement ¶ 9, at 4-5, filed

September 22, 2005 (Doc. 119).   The plea agreement also permits Jacquez to argue for a downward

departure.

The Probation Office disclosed the PSR to the parties on November 2, 2005.  Paragraph 12

of the PSR notes that the non-binding plea agreement stipulates that, pursuant to U.S.S.G. § 3E1.1,

so long as Jacquez continues to accept responsibility for his criminal conduct, he is entitled to a

three-level reduction.  See PSR at 5.

In the PSR, Probation calculates Jacquez' base offense level as 32.  See id. ¶ 42, at 12.

Probation determined that the base offense level should be increased by two levels for obstruction

pursuant to U.S.S.G. § 3C1.1.  See id. ¶ 46, at 13.  In paragraph 46 of the PSR, the Probation Office

made an upward adjustment for obstruction.  See id.

Pursuant to U.S.S.G. § 3C1.1,

[i]f (A) the defendant willfully obstructed or impeded, or attempted to obstruct or
impede, the administration of justice during the course of the investigation,
prosecution, or sentencing of the instant offense of conviction, and (B) the
obstructive conduct related to (i) the defendant's offense of conviction and any
relevant conduct; or (ii) a closely related offense, increase the offense level by two
levels.

Pursuant to U.S.S.G. §3C1.1, Application Note 4(a), "threatening, intimidating, or otherwise

unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do

so," is a non-exhaustive example of obstruction of justice.

The PSR states that the Farmington Police Department filed a police report on January 25,

2005, which reflected that Jacquez bribed or intimidated a witness.  The PSR states that Jacquez

approached and threatened a witness that was expected to testify regarding this federal offense.  See

-4-

PSR ¶ 46, at 13.  On January 26, 2005, a federal warrant was issued as to Jacquez.  See id.

Jacquez did not, as the Pretrial Officer directed, turn himself in on the warrant and did not, as directed, report to Pretrial Services.  See id.  Jacquez was taken into federal custody on May 26, 2005, and his conditions of release were revoked.  See id.  Based on Jacquez' non-compliance with his conditions of release and failing to report to Pretrial Services from on or about January 26, 2005 through on or about May 13, 2005, the PSR contends that, pursuant to § 3C1.1, a two-level increase is warranted.  See id.

Paragraph 48 deals with the adjustment for acceptance of responsibility.  See id. ¶ 48, at 14. Pursuant to the parties' stipulation, the PSR reluctantly grants Jacquez a reduction of three levels for acceptance of responsibility.  See id.  Pursuant to U.S.S.G. § 3E1.1, Application Note 1,

1.   In determining whether a defendant qualifies under subsection (a), appropriate considerations include, but are not limited to, the following:

* * * *

(b)   voluntary termination or withdrawal from criminal conduct or associations;

* * * *

(d)   voluntary surrender to authorities promptly after commission of the offense;

* * * *

(g)   post-offense rehabilitative efforts; and

(h)   the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

Pursuant to U.S.S.G. § 3E1.1, Application Note 4, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant

has not accepted responsibility for his criminal conduct.  There may, however, be extraordinary cases in which adjustments under both § 3C1.1 and § 3E1.1 may apply."

The PSR notes that, between June 14, 2004 and November 24, 2004, Jacquez incurred numerous violations of his electronic monitoring.  See PSR ¶ 48, at 14.  On September 25, 2004, January 4, 2005, January 14, 2005, and January 18, 2005, Jacquez did not report for scheduled drug testing.  See id.  On June 24, 2004, September 17, 2004, and January 12, 2005, Jacquez did not, as directed, attend substance abuse treatment.  See id.  On January 14, 2005, Jacquez did not report for a breath alcohol concentration test.  See id.  In paragraph 48 of the PSR, Probation states: "On January 8, 2005, the defendant surrendered to the Farmington Police Department after being notified by the Pretrial Services officer that a warrant was issued for his arrest by the Farmington Police." Id.  The PSR reports that the affidavit for arrest reflected that Jacquez was in Possession of a Schedule II Narcotic Drug (Cocaine), Possession of a Schedule I Controlled Substance (Ecstasy/MDMA), Possession of a Schedule II Controlled Substance (Marinol), Possession of Marijuana Under One Ounce, and Possession of Drug Paraphernalia.  See id.  When a search warrant was executed at Jacquez' residence, officers discovered cocaine, a Ruger P85 9 millimeter pistol, and a whizinator.  Jacquez denied ownership of the items seized during the search.  See id.

Based on Jacquez' non-compliance with his conditions of release and his not reporting for pretrial supervision from on or about January 26, 2005 through on or about May 13, 2005, Probation found that, pursuant to § 3E1.1, a three-level decrease is not warranted.  See id. at 15.  The PSR also notes, however, that, pursuant to the plea agreement, it would nonetheless apply a three-level reduction in the offense level.  See id.

Thus, the PSR calculates Jacquez' total offense level to be 31 -- reflecting a base offense

level of 32, an increase of 2 levels for obstruction of justice, and a decrease of 3 levels for acceptance of responsibility.  See id. ¶¶ 42, 46, 48- 49, at 12-15.

## 2.    Criminal History Calculation.

In regards to Jacquez' criminal history calculation, paragraphs 62 and 64 set out incidents that are alleged to have occurred on July 30, 2003, and, on November 14, 2003; according to the PSR, the municipal court in Farmington handled each matter.  See id. ¶¶ 62, 64, at 20-21.

The PSR states that Jacquez was arrested at age 21 for the July 30, 2003 incident, and charged in Count 1 with Unlawful Possession of Marijuana, in Count 2 with Paraphernalia for Use, and in Count 3 with Contempt.  See id. ¶ 62, at 20.  The proceedings took place in Farmington Municipal Court, Farmington, New Mexico, Case No. 2003-0010121-MU-CR.  See id.  The PSR indicates that Counts 1 and 2 resulted in a fine of $403.00, and Count 3 resulted in a fine of $100.00 See id.

The PSR reports that, at age 22, Jacquez was arrested for the November 14, 2003 incident and charged in Count 1 with Paraphernalia for Use.  See id. ¶ 64, at 21.  The proceedings took place in Farmington Municipal Court, Farmington, New Mexico, Case No. 2003-0015187-MU-CR.  See id.  The PSR represents that Count 1 resulted in a fine of $403.00.  See id.

Under U.S.S.G. § 4A1.1(c), Probation assigned him one criminal history point for each of the above incidents.  See id. ¶¶ 62, 64, at 20-21.  The PSR states that attorney representation is unknown for each incident, and that Probation obtained its information from court records.  See id. Probation states that no further information regarding this offense was discovered and that attempts to secure reports were unsuccessful.  See id.

The PSR calculates Jacquez' Criminal History Category to be II.  See id. ¶ 65, at 21.  The

resulting guideline imprisonment range is 121 to 151 months as to the drug charges, to be followed by 60 months imprisonment as to the gun charge.  See id. ¶ 98, at 29.  After reviewing the facts, Probation determined that there is no basis for a downward departure.  See id. ¶¶ 114-115, at 33-34.

Jacquez filed his objections to the PSR and request for a downward departure on December 12, 2005.  Jacquez makes two major objections to the PSR.  Jacquez takes exception with paragraph 46 of the PSR, which increases his offense level by two.  See Objections at 1.  Jacquez thus objects to the conclusion in paragraph 49 that his total offense level is 31.  See id. ¶ 3, at 2.  Jacquez also takes issue with the conclusion in paragraph 65 that he has 2 criminal history points and is therefore in Category II.  See id. ¶ 6, at 3.  His position is that he is in Category I, with 0 or 1 criminal history points.  See id.

On December 12, 2005, the Probation Office received Jacquez' signed statement for acceptance of responsibility.  The statement reads:

> On April 8, 2004, and again on June 2, 2004, I had in my possession 5 grams or more of methamphetamine, and on each occasion, I intended to distribute that controlled substance to another or others.  Those incidents occurred in San Juan County, New Mexico.  Also from early April 2004 until early June 2004, I lived at 8550 Foothills Drive, Farmington, New Mexico, and used that residence for the purpose of distributing methamphetamine.  Also, on or about June 2, 2004, I had a firearm in my possession at the listed below residence, and kept it in furtherance of a drug trafficking crime.

Addendum to the PSR at 4-5.

On December 22, 2005, Probation disclosed an Addendum to the PSR addressing Jacquez' objections and his request for a downward departure.  See generally id.  Probation rejected each of Jacquez' objections and reaffirmed its position that a downward departure is not warranted.  See id. at 1-3.  The United States concurs with Probation's reasoning and conclusions, and adopts its

Addendum to the PSR in response to Jacquez' Objections to the Presentence Report.  See United States' Response to Defendant's Objections to the Presentence Report ¶ 3, at 2, filed December 28, 2005 (Doc. 126).

## SENTENCING GUIDELINES AND CRIMINAL HISTORY

Guideline § 4A1.2 provides that sentences for all felony offenses are counted in computing criminal history, and sentences for misdemeanor and petty offenses are counted except that "[s]entences for the [enumerated] prior offenses and offenses similar to them . . . are counted only if:" (i) the state court imposed a term of probation of one year or a thirty-day sentence of imprisonment; (ii) or if "the prior incident was similar to an instant offense."  U.S.S.G. § 4A1.2(c)(1).  Local ordinance violations are included in the enumerated list, except for local ordinance violations that are also criminal offenses under state law.  See id.  Thus, local ordinance violations that are also criminal offenses under state law are included in computing criminal history.

Pursuant to § 4A1.2(c)(2), sentences for the following offenses and offenses similar to them, by whatever name they are known, are never counted: (i) hitchhiking; (ii) juvenile status offenses, and truancy; (iii) loitering; (iv) minor traffic infractions (e.g., speeding); (v) public intoxication; and (vi) vagrancy.

N.M. Stat. Ann. § 30-31-23 prohibits the possession of controlled substances:  "It is unlawful for any person intentionally to possess a controlled substance . . . ."  N.M. Stat. Ann. § 30-31-25.1 prohibits possession with intent to distribute drug paraphernalia:

> A.  It is unlawful for a person to use or possess with intent to use drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body a controlled substance in violation of the Controlled Substances Act.  The provisions of this subsection do not

apply to a person who is in possession of hypodermic syringes or needles at the time
he is directly and immediately engaged in a harm reduction program, as provided in
the Harm Reduction Act.

Farmington Municipal Code 18-5-10 provides: "(b) Possession.  It shall be unlawful for any person
to possess any of the paraphernalia enumerated in subsection (a) of this section, where such
paraphernalia is actually used or intended to be used in connection with the use of any controlled
substance."  According to Black's Law Dictionary, Public Intoxication is the appearance of a person,
who is under the influence of drugs or alcohol, in a place open to the general public.  See Black's
Law Dictionary 663 (7th ed. 2000).  Vagrancy is the state or condition of wandering from place to
place without a home, job or means of support.  See id. at 1255.

Section 5H1.4 of the Sentencing Guidelines states that physical condition or appearance,
including physique, is not ordinarily relevant in determining whether a departure may be warranted.
An extraordinary physical impairment, however, may be a reason to depart downward, e.g., in the
case of a seriously infirm defendant, home detention may be as efficient as, and less costly than,
imprisonment.  See id.  "Drug or alcohol dependence or abuse is not a reason for a downward
departure."  Id.

## ANALYSIS

The United States has not shown that Jacquez obstructed justice, and the Court therefore will
not increase Jacquez' offense level by 2 levels.  Jacquez is entitled to an adjustment in his offense
level for acceptance of responsibility.  The Court will count the prior offenses in Jacquez' criminal
history, because they are local ordinance violations that are also criminal offenses under state law,
and do not fit under § 4A1.2(c)(2) as offenses that are never counted in criminal history.  Thus, the
Court will sustain Jacquez' objection to the PSR's offense level, but will overrule his objection to

the Criminal History Category II.

## I.  THE COURT WILL SUSTAIN JACQUEZ' OBJECTION TO THE PSR'S DETERMINATION OF THE GUIDELINE SENTENCE.

The United States has not shown that Jacquez has obstructed justice, and stands by its stipulation that Jacquez has accepted responsibility.  Because the United States has not shown that Jacquez obstructed justice, the Court will sustain Jacquez objection to the 2-level increase in offense level and the objection to the overall offense level of 31.

### A.  THE COURT WILL SUSTAIN JACQUEZ' OBJECTION TO PARAGRAPH 46 OF THE PSR.

There is an allegation that a police report was filed on January 25, 2005, but Jacquez contends, on information and belief, that no criminal charges were filed regarding the allegations in that report.  See Objections ¶ 1, at 1.  Jacquez also states that, on further information and belief, the allegations in the report were more based on the alleged victim's subjective fear rather than any conduct, objectively viewed, that he allegedly committed.  See id.

The United States did not produce any witnesses or exhibits at the sentencing to substantiate that Jacquez had intimidated or threatened a witness, and deferred to the Court on the obstruction-of-justice enhancement.  See Transcript of Hearing at 4:22-5:9 (taken January 11, 2006).[1]  Without any more than a police report, the Court finds that the United States has not met its burden of proof to show that Jacquez obstructed justice.

Although paragraph 46 on page 13 of the PSR also makes reference to Jacquez' failure to turn himself in to authorities from January to May 2005, the report also sets out that Jacquez turned

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

himself into authorities on January 8, 2005.  There is also some confusion as to what exactly happened, and Jacquez contends that he was taken into custody in March instead of May and that he was then turned over to federal custody in May, 2005.  See id. at 8:3-25.  The Court does not believe that there is sufficient evidence before the Court for it to determine with precision what happened, and the United States did not present evidence or offer any witnesses.  In any case, again, the United States has not met its burden of showing that Jacquez obstructed justice with his surrender.

In regards to the "Obstruction of Justice," Jacquez further objects to a two-level increase in light of the fact that generally a person cannot receive a downward adjustment for "Acceptance of Responsibility" if he has obstructed justice.  Objections ¶ 2, at 1-2.  Jacquez argues that, because he is to receive a reduction in his offense level for acceptance of responsibility, then the inverse of the general rule should apply, i.e., if a defendant accepts responsibility, he should not be charged with, or receive an upward adjustment for, obstruction-of-justice.  See id.  While the Court does not necessarily agree that Jacquez' inversion of the general rule is correct, because the Court determines, as stated below, that Jacquez is entitled to a downward adjustment for his acceptance of responsibility, the Court believes that those facts also support a finding that he did not obstruct justice.

The Court does not believe that the Probation office correctly applied, pursuant to U.S.S.G. § 3C1.1, the obstruction of justice increase.  Based on all available investigative information that the parties have presented to the Court, the Court cannot say that the United States has shown, by a preponderance of the evidence, that Jacquez obstructed justice.

-12-

**B.     THE COURT CONCLUDES THAT THE ADJUSTMENT FOR ACCEPTANCE OF RESPONSIBILITY IN PARAGRAPH 48 IS CORRECT.**

Probation contends that Jacquez' non-compliance with his conditions of release and his lack of post-offense rehabilitative efforts reflect that he has not accepted responsibility. While compliance and rehabilitative efforts may support acceptance, the Court is not convinced the opposite is necessarily true. Jacquez has stated that he accepts responsibility, and the United States agrees. Indeed, at the hearing, the United States asserted that it stood by its stipulation that Jacquez accepted responsibility, and indicated that Jacquez assisted the United States more than was ordinarily required to show acceptance of responsibility. See Transcript of Hearing at 5:7-6:3.

That Jacquez is not towing the line now may suggest that his sentence needs to reflect his inability to comply with Pretrial's conditions, but it does not necessarily indicate that he no longer accepts responsibility for his actions. Jacquez' voluntary termination or withdrawal from criminal conduct or associations, post-offense rehabilitative efforts, the timeliness of Jacquez' conduct in manifesting the acceptance of responsibility, and voluntary surrender promptly after commission of the offense are considerations that the Court takes into account to determine whether Jacquez has accepted responsibility. Probation lists Jacquez' not surrendering after a warrant was issued as evidence of non-acceptance of responsibility. There is no evidence, however, that Jacquez did not promptly surrender after commission of the offense, and the non-surrender asserted by Probation occurred after Jacquez had already been in custody and released on conditions.

The Court agrees with Jacquez and the United States that he has accepted responsibility and qualifies for the reduction. Jacquez has admitted his actions, stated his acceptance of responsibility, assisted the United States "above and beyond" what he was required to do, and has willingly entered

into a plea agreement.  These factors outweigh the incidents of non-compliance with his conditions of release, and the unclear evidence of Jacquez absconding.  Probation asserts that a federal warrant was issued January 26, 2005 and Jacquez was not taken into custody until May 26, 2005, whereas Jacquez contends that he was taken into custody in March, 2005 but not delivered to federal custody until May.  Jacquez should thus receive the reduction in level for Acceptance of Responsibility.  The Court thus accepts the stipulation in the plea agreement and applies a three-level reduction in the offense level.

### C.     THE COURT SUSTAINS THE OBJECTION TO THE TOTAL OFFENSE LEVEL.

Without the two-level increase for Obstruction, and with the three level reduction for Acceptance of Responsibility, Jacquez' offense level should be at level 29.  The Court will therefore sustain Jacquez' objection to paragraph 49 of the PSR.

### D.     THE COURT OVERRULES THE OBJECTION TO THE PSR'S CRIMINAL HISTORY.

Jacquez argues in his brief, that, without further official court records to substantiate that there were separate, distinctive criminal incidents, the Court should not consider the incidents to constitute two different incidents, giving rise to two criminal history points, especially given that Jacquez was apparently not represented by counsel.  See Objections ¶ 4, at 2.  Probation has, however, obtained court and offense reports from the Farmington, New Mexico, Municipal Court concerning the incident described in paragraph 62 of the PSR.  See Farmington Municipal Court Disposition/Commitment Order, Case No. 2003-10121MU at 1 (not dated); Farmington Police Department Citation, Case No. 2003-10121MU at 1.  On July 30, 2003, a Farmington, New Mexico, police officer recognized Jacquez driving a vehicle in the city of Farmington.  See Farmington Police

Department Citation at 1.  The officer knew of an active warrant for his arrest.  See id.  The officer initiated a traffic stop and subsequently arrested Jacquez regarding the active warrant.  See id.  A tow inventory of Jacquez' vehicle revealed marijuana, a pipe for smoking marijuana, and an open bottle of tequila located in the vehicle.  See id.  Jacquez was subsequently cited for Count 1: Possession of Marijuana, and Count 2: Possession of Drug Paraphernalia.  See Farmington Municipal Court Disposition/Commitment Order at 1.  On August 27, 2003, Jacquez pled guilty in Farmington, New Mexico, Municipal Court, case number 2003-10121-MU, and sentenced to Count 1: $392.00, and Count 2: $392.00, for a total of $784.00, which was to be paid within 90 days.  See id.  The PSR incorrectly reflects Jacquez was sentenced to $403.00 as to Count 1 and $403.00 as to Count 2.  See PSR ¶ 62, at 20.

In regards to paragraph 64 of the PSR, Probation obtained court and offense reports from the Farmington, New Mexico, Police Department, and a Judgment from the Farmington, New Mexico, Municipal Court.  See Final Order on Criminal Complaint, Case No. 2003-0005457 at 1 (dated June 28, 2004); Additional Narrative For Municipal Citation #16899 (dated November 14, 2003).  This arrest and conviction is a separate incident from that described in paragraph 62 of the PSR.  On November 14, 2003, officers with the Farmington, New Mexico, Police Department, were working in an unmarked vehicle.  See Additional Narrative for Municipal Citation # 16899 at 1.  The officers observed Jacquez driving a vehicle in the city of Farmington, New Mexico.  See id.  The officers were aware of an active warrant for Jacquez' arrest for Failure to Appear.  See id.  The officers initiated a traffic stop and subsequently arrested Jacquez on the warrant.  See id.  Jacquez had a female passenger with him at the time of his arrest.  See id.  Upon a tow inventory of the vehicle, the officer located a purse.  See id.  Inside of the purse, the officer found methamphetamine and a

-15-

pipe used to smoke methamphetamine.  See id.  An officer also located two glass methamphetamine pipes located under the dash board of Jacquez' vehicle.  See id.  Jacquez was issued a citation for Paraphernalia for Use.  See id.  On June 28, 2004, Jacquez was represented by counsel and pled guilty in Farmington, New Mexico, Municipal Court, case number 2003-15187 to Possession of Paraphernalia.  See Final Order on Criminal Complaint at 1.  He was sentenced to a $403.00 fine/fee. See id.  Jacquez conceded at the sentencing hearing that these were in fact two separate incidents, and he withdrew his objection that they were the same incident.  See Transcript of Hearing at 9:14-18.

It appears to the Court that, because these matters were handled in municipal court in Farmington, they were likely local ordinance violations.  Indeed, the Farmington Police Department Citation lists local ordinance § 18-5-9 and § 18-5-10 as the ordinance violations involved in the July 30, 2003 incident.  See Farmington Police Department Citation at 1.  Jacquez objects, pursuant to § 4A1.2(c)(1) and § 4A1.2(c)(2), to the PSR counting the two local ordinance violations in the criminal history computation.  See Objections ¶ 5, at 2-3.

Jacquez specifically contends that: (i) he did not receive any sentence of probation or imprisonment, and thus under the Guidelines, the local ordinance violation does not count in the criminal history computation, see § 4A1.2(c)(1); and (ii) Possession of Drug Paraphernalia is similar to a petty offense of public intoxication or vagrancy, which the Guidelines state "are never counted," § 4A1.2(c)(2).

Here, the local ordinance violation did not result in a term of probation or imprisonment, but only a fine, and the prior offenses are not similar to the instant offense.  Although Jacquez correctly interprets § 4A1.2(c)(1) to exclude local ordinance violations that do not result in probation of at

least one year or a term of imprisonment of at least thirty days and where the prior offense is not similar to the instant offense, he leaves out the exception to the rule.  Local ordinance violations that are also criminal offenses under state law are exceptions to the probation/imprisonment rule.  <u>See</u> § 4A1.2(c)(1).  Thus, if the local ordinance violation of Paraphernalia for controlled substances is also a criminal offense under state law, then the PSR correctly calculated the criminal history computation as including both incidents.

Farmington Municipal local ordinance § 18-5-10 makes it unlawful for a person to possess drug paraphernalia where such paraphernalia is actually used or intended to be used in connection with the use of any controlled substance.  N.M. Stat. Ann. § 30-31-25.1 prohibits possession with intent to distribute drug paraphernalia and provides that it is unlawful for a person to use or possess with intent to use drug paraphernalia in connection with a controlled substance.  Thus, the local ordinance violation -- possession of drug paraphernalia with use or intention to use in connection with a controlled substance -- is also a criminal offense under state law and is therefore not excluded by § 4A1.2(c)(1) in the criminal history computation.

Also, the crime regarding paraphernalia does not fall under the category of crimes listed in 4A1.2(c)(2), <u>e.g.</u>, public intoxication/vagrancy.   When the Court compares the elements of Possession of Drug Paraphernalia with the elements of Public Intoxication and Vagrancy, the Court concludes that they are not similar.  <u>See</u> <u>United States v. Bridge</u>, 378 F.3d 838, 838-39 (8th Cir. 2004)(concluding that possession of drug paraphernalia is not similar to the category of offenses listed in section 4A1.2(c)(2)); <u>United States v. Forney</u>, No. 94-5650, 1995 U.S. App. LEXIS 10770, at *4 (4th Cir. May 15, 1995)("Possession of drug paraphernalia is not similar to one of the minor offenses excluded from consideration by U.S.S.G. § 4A1.2(c)."); <u>United States v. Wyatt</u>, 69 F. Supp.

2d 1337, 1340 (D.Kan. 1999)("[P]ossession of drug paraphernalia, [is] counted because [it] qualif[ies] as [a] criminal offense[] under state law and [is] not precluded by the guidelines")(citing U.S.S.G. § 4A1.2(c)).   It is thus the Court's assessment that Probation properly applied the criminal history points for Possession of Drug Paraphernalia.

Because, the local ordinance violation is also a criminal offense under state law, and because Possession of Drug Paraphernalia does not fall under § 4A1.2(c)(2), the Court concludes that the prior offenses were correctly included in the criminal history computation.   The Court overrules Jacquez' objection to his criminal history category of II.

### E.   THE COURT WILL DENY THE MOTION FOR A DOWNWARD DEPARTURE.

Jacquez believes that a downward departure is warranted under the circumstances.   Largely because the accident led to his drug use and marketing, Jacquez asks the Court to consider a downward departure to a level of 21.   Jacquez asks the Court to sentence him consistent with an offense level of 21 and a Criminal History Category of I.   See Objections ¶¶ 6-7, at 3-4.   Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will deny Jacquez' motion for downward departure.

Jacquez would be able to attend mental health counseling during any period of incarceration or supervision.   Additionally, Jacquez has not provided sufficient evidence to indicate that his mental and emotional condition is extraordinary to warrant a downward departure.   Jacquez does not appear to be seriously infirm, nor does an extraordinary physical impairment exist providing reason to depart downward.

The Court will deny Jacquez' request for a departure.   Jacquez has not convinced the Court

that a departure is authorized under the facts of this case. The Court has trouble saying that Jacquez'

depression and physical limitations take him out of the heartland of defendants who stand before the

federal courts on drug charges. In any case, the Court chooses not to depart, because it does not

believe departure is warranted under the facts and circumstances here. Unfortunately, many

defendants have some diminished capacity, and the Court has trouble distinguishing Jacquez' case

from many others. The Court concludes that this case fits into the heartland of cases before the

federal courts. And, even if departure were authorized under the facts of this case, the Court would

exercise its discretion not to depart, because it is convinced this case fits within the heartland of

cases that the federal courts have before it.

## II.    THE COURT'S <u>BOOKER</u> OR REASONABLE SENTENCE WILL BE A <u>GUIDELINE SENTENCE</u>.

The Court has considered the Guidelines, but in arriving at its sentence, the Court has taken

account not only of the Guidelines, but of other sentencing goals. Specifically, the Court has

considered the Guidelines' sentencing range established for the applicable category of offense

committed by the applicable category of defendant. The Court believes that the punishment set forth

in the Guidelines is appropriate for this sort of offense and will result in a reasonable sentence.

The Court has then considered the kinds of sentences and ranges that the Guidelines

establish. The Court believes that a sentence of 97 months for Count 1, 3, and 5 and 60 months for

Count 4 reflects the seriousness of the offense, promotes respect for the law, provides just

punishment, affords adequate deterrence, protects the public, and, because of the other

recommendations that the Court will make to the Bureau of Prisons and the conditions that the Court

will impose during supervised release, effectively provides Jacquez with needed counseling,

education, training, and care.  This sentence fully reflects each of the factors embodied in 18 U.S.C. § 3553(a).

Jacquez requested, at the hearing, that the Court consider the totality of the circumstances, including Jacquez' assistance to the United States, in deviating from a Guideline sentence.  See Transcript of Hearing at 33:7-23.  The Court believes that in light of the totality of the circumstances, a Guideline sentence is a reasonable sentence.  The Court already took Jacquez' assistance to the United States into account in finding that he was entitled to a reduction for acceptance of responsibility, and that he did not obstruct justice.  The Court also does not believe that Jacquez' criminal history of II is over-represented.  Jacquez' prior criminal conduct is similar to other defendants with a criminal history category of II.  That Jacquez' prior convictions are for what he considers minor infractions -- possession of marijuana and drug paraphernalia -- does not convince the Court that a deviation is appropriate.  The prior convictions combined with this conviction show a pattern of Jacquez' connection with illegal drugs and a Guideline sentence will help deter this pattern, and provide rehabilitative opportunities to help Jacquez break this pattern in the future.  Finally, Jacquez' physical and emotional circumstances do not warrant a deviation.  Although Jacquez' accident and subsequent physical and emotional problems may have led him to a criminal path, they are not extraordinary or unique enough compared to other defendants to deviate from a Guideline sentence, and the recommendations that the Court will make to the Bureau of Prisons will give Jacquez his needed education, counseling, and care.  The Court is not unsympathetic to Jacquez' circumstances, but the Court sees many defendants with difficult stories -- such as abuse and neglect -- that led to a criminal path.  The Court will sentence Jacquez to the lower end of the Guidelines, which the Court believes is a reasonable sentence in light of the factors set out in § 3553(a).

The Court believes that this sentence is reasonable.  The Court believes that this sentence is sufficient, but not greater than necessary, to comply with the purposes of punishment set forth in the Sentencing Reform Act.

**IT IS ORDERED** that Jacquez' Objections to the Presentence Report are sustained in part and overruled in part, and his motion for a downward departure is denied.  The Court will sentence the Defendant within the applicable guideline range.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
   United States Attorney for the
     District of New Mexico
James R.W. Braun
   Assistant United State Attorney for the
     District of New Mexico
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

James Bierly
Albuquerque, New Mexico

   *Attorney for the Defendant*

-21-